UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CHRISTOPHER A. WILSON,

        Petitioner,

v.

HAROLD GRAHAM,

        Respondent.

9:17-CV-0863
(BKS)

---

APPEARANCES:

CHRISTOPHER A. WILSON
Petitioner, pro se
13-B-1473
Cayuga Correctional Facility
P.O. Box 1186
Moravia, NY 13118

HON. BARBARA D. UNDERWOOD
Counsel for Respondent
Office of the Attorney General
28 Liberty Street
New York, New York 10005

BRENDA K. SANNES
United States District Judge

OF COUNSEL:

MATTHEW B. KELLER, ESQ.
Assistant Attorney General

**DECISION and ORDER**

**I.    INTRODUCTION**

Petitioner Christopher A. Wilson, proceeding *pro se*, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. No. 10, Second Amended Petition ("Pet."). Respondent filed a response in opposition to the petition and pertinent records from petitioner's state court proceedings. Dkt. No. 16, Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("R. Mem."); Dkt. No. 17, Answer; Dkt. Nos. 18-1, State Court Records

("SR"); Dkt. No. 18-2, State Court Transcripts. Petitioner did not file a reply.

For the reasons that follow, petitioner's habeas petition is denied and dismissed.

## II. RELEVANT BACKGROUND

In May 2012, petitioner was charged in a sealed indictment with criminal possession of a controlled substance in the first degree (N.Y. Penal Law ("Penal Law") § 220.21(1)), criminal possession of a controlled substance in the third degree (*Id.* § 220.16(1)), conspiracy in the second degree (*Id.* § 105.15), and five counts of criminally using drug paraphernalia in the second degree (*Id.* § 220.50(2), (3)). SR at 104-07, Indictment. The charges stemmed from an incident in April 2012, during which a police officer investigated a complaint of an odor of marijuana made by a tenant in an apartment building, knocked on the door of a neighboring apartment, and, ultimately, discovered marijuana and cocaine inside that apartment. Dkt. No. 18-2, Suppression Hearing Tr. ("SH"), 9/26/12, at 73-80.[1]

In his counseled omnibus motion, petitioner moved to suppress physical evidence obtained as a result of the warrantless entry into the apartment where he and his codefendants were located. SR at 115-18. The Jefferson County Court held an evidentiary hearing on September 26, 2012. SR at 138-39; SH at 1-5.

### A. Suppression Hearing

At the hearing, Sabrina Kellogg, who resided in apartment 8 of the building at issue during the relevant time period, testified that in January or February 2012, she had contact with the Village of Adams Police Department because her apartment was burglarized. SH at 7-8. On that occasion, Kellogg also complained to law enforcement because, at various

---

[1] The suppression hearing transcript is located at pages 1-138 of the CM/ECF pagination for Docket Number 18-2.

times, she could smell an odor of marijuana emanating from the adjoining apartment. *Id.* at 8-9. Kellogg kept in touch with detective Ron Gatch, and advised Gatch when she noticed the smell, but it would quickly dissipate on each occasion. *Id.* at 10-11. On April 1, 2012, Kellogg contacted Gatch and advised him that the smell was the "worst that it ha[d] ever been[.]" *Id.* at 12. Gatch came to Kellogg's apartment and performed a "walk-through" to determine from where the odor was originating. *Id.* at 13.

Gatch testified that, in the early spring of 2012, he investigated a burglary complaint made by Kellogg, which was one of several such complaints in the same apartment building. *Id.* at 59-60. During the course of that investigation, Kellogg advised Gatch that "her next door neighbor in apartment [7] had been smoking marijuana and there was a lot of foot traffic there." *Id.* at 61. Gatch told Kellogg to "let [him] know" the "next time" that she smelled the odor, and that he would "come and speak with her" if he could. *Id.*

Although Kellogg thereafter contacted Gatch approximately once or twice per week about the odor, Gatch worked in the Village of Adams only two days per week and was unable to respond in time to experience the odor first-hand until April 1, 2012. *Id.* at 62. Gatch investigated the apartment, which Kellogg identified as the source of the odor, and surveilled the building. *Id.* at 63-64. As a result, he observed petitioner once prior to April 1, 2012. *Id.* at 64. On the same date, Gatch went to the building and saw a white Mitsubishi Gallant in the parking lot. *Id.* at 66. Gatch learned a few days earlier that petitioner had used that vehicle. *Id.* at 65-67.[2] While surveilling the building, Gatch observed a person known to

---

[2] Based upon his investigation, Gatch also determined that apartment 7 was rented by codefendant Rajsheem Richardson, and that codefendant Kristin Avallone-Clark "frequent[ed]" the apartment. SH at 63-64. Gatch was "familiar with" Richardson, Avallone-Clark, and petitioner. *Id.* at 65-66.

3

him as Daniel Borg emerge from the building entrance that led "right up to" apartment 7's door. *Id.* at 67-68. Borg got into the Gallant and drove away. *Id.* at 68. Gatch knew that Borg's driver's license had been revoked (and confirmed that fact), and so Gatch followed Borg out of the vicinity of the apartment building and executed a traffic stop. *Id.*

Gatch placed Borg under arrest and, during a search incident to the arrest, discovered a bag containing approximately five grams of cocaine. *Id.* at 69. Borg told Gatch that he had just purchased the cocaine from an apartment in the building that he just left, and that the seller was known as "Black." *Id.* at 70-71. Gatch was aware that other individuals had referred to petitioner as "Black," and Borg added that the seller's first name was Chris. *Id.* Gatch allowed Borg to contact someone to pick him up. *Id.* at 71.[3]

Thereafter, Gatch returned to the apartment building and, around the same time, received a text message from Kellogg stating that the odor of marijuana had returned and was "very strong in the apartment." *Id.* at 73. Gatch entered the building, went into Kellogg's apartment, and determined that the odor was "strongest closest to the wall that she shared with apartment [7]." *Id.* at 74-75. Gatch called for backup and knocked on the door to apartment 7. *Id.* at 75-76.

Petitioner opened the door, and Gatch stated that he needed to speak to him "about the odor of marijuana," which was stronger when the door was opened. *Id.* at 76. Petitioner "attempted to slam the door," and Gatch pushed the door open and entered the apartment because he feared that any evidence would be easily destroyed or hidden. *Id.* at 77.

---

[3] Gatch testified that he did not arrest Borg because Borg agreed to "have someone drive him back" to the apartment building so that Gatch "could see what apartment door he went into." *Id.* at 71. Gatch was expecting Brog to return to the apartment, but Borg did not do so. *Id.* at 72.

4

Petitioner, Avallone-Clark, and another individual, codefendant Emmanuel Sheppard, were inside. *Id.* at 78. Gatch saw a "large quantity of white powder that [he] suspected to be cocaine" on the kitchen counter and left the apartment to obtain a warrant while another officer detained the occupants. *Id.* at 79-80.

In a lengthy Decision and Order dated November 14, 2012, the Jefferson County Court denied petitioner's motion to suppress (as well as the motions of his codefendants). SR at 155-177. The court made detailed findings of fact and rejected petitioner's and his codefendants' argument that Gatch violated their rights by knocking on the door to apartment 7 without first obtaining a search warrant. *Id.* at 156-70. The court explained that, "[o]nce that [apartment] door was opened, the circumstances changed [and] much of what Officer Gatch had merely suspected prior to knocking on the door, was confirmed." *Id.* at 170. Before Gatch "ever stepped over the threshold of that apartment," he learned that petitioner was in fact present in that apartment and that the odor of marijuana was originating from apartment 7. *Id.* at 170-71. Additionally, the court concluded that exigent circumstances existed, and that Gatch reasonably believed that the drugs at issue would have been moved or destroyed if he did not enter at that time. *Id.* at 171-75, 177.

### B. Plea Proceeding

On January 7, 2013, petitioner appeared before the county court with counsel and entered into a plea agreement. Dkt. No. 18-2, Plea Proceeding Tr. ("PP"), 1/7/13, at 1-3. Petitioner agreed to plead guilty to one count of criminal possession of a controlled substance in the first degree upon the understanding that the court would sentence him to twelve years imprisonment and five years postrelease supervision. The agreement was also

predicated upon the understanding that his sentence would run concurrent to any future sentence resulting from an investigation then being conducted by the New York State Attorney General, and that another felony charge for promoting prison contraband then pending would be "merged" into the sentence. *Id.* at 2-3.[4]

Petitioner was sworn and acknowledged that he understood the terms of the plea agreement, he had discussed the terms of the plea agreement with defense counsel, and no one had forced him to plead guilty. *Id.* at 4. The court enumerated the rights that petitioner was giving up by pleading guilty, including the right to (1) a jury trial, (2) require the prosecution to prove his guilt beyond a reasonable doubt, (3) testify, and (4) cross-examine witnesses against him; petitioner stated that he understood. *Id.* at 4-5. Petitioner pleaded guilty to the charge, which was based upon his knowing and unlawful possession of a mixture or compound of a substance that weighed more than eight ounces and contained cocaine. *Id.* at 6.

On May 10, 2013, the court sentenced petitioner as a second felony offender and imposed the agreed-upon sentence. Dkt. No. 18-2, Sentencing Tr. ("Sent."), 5/10/13, at 5-6.

### C. Direct Appeal

Petitioner filed a counseled brief on direct appeal to the Appellate Division, Fourth Department, in which he argued that the trial court erred in denying petitioner's motion to suppress the fruits of an unlawful warrantless search of an apartment. SR at 5, 13-33. Specifically, petitioner contended that "[t]he lower court's focus on the 'scintilla of time

---

[4] The court stated that, if petitioner were indicted for any violent felonies as a result of the Attorney General investigation, it would not commit to a concurrent sentence. PP at 8. Petitioner acknowledged that he understood. *Id.*

immediately following [petitioner's] attempt to close the door' ignored what Officer Gatch knew prior to knocking on the door to Apartment 7. . . . In so doing, the lower court failed to properly evaluate whether Officer Gatch had time to secure a warrant." *Id.* at 14.

The Fourth Department affirmed petitioner's conviction for the reasons it previously stated in *People v. Richardson*, 132 A.D.3d 1313 (4th Dep't 2015). *People v. Wilson*, 134 A.D.3d 1396 (4th Dep't 2015). In *Richardson*, the Fourth Department agreed that the lower "court properly determined that the police had probable cause to believe that a crime was being committed in the apartment and that exigent circumstances existed for the warrantless entry into the apartment." 132 A.D.3d at 1314. The Fourth Department reiterated the facts and held

> that the police had the right to knock on the door to investigate the complaint of the odor of marijuana. . . . After codefendant opened the door, the officer then had probable cause to believe both that there was marijuana in the apartment, based upon the strong odor that emanated therefrom, and that codefendant had sold cocaine to the man the officer had arrested. The court properly determined that exigent circumstances arose when codefendant attempted to slam the door inasmuch as it is well known that persons who engage in drug trafficking will often attempt to dispose of the narcotics or escape. . . . Courts have long recognized that the Fourth Amendment is not violated every time police enter a private premises without a warrant. Indeed, though warrantless entries into a home are presumptively unreasonable, the touchstone of the Fourth Amendment is reasonableness—not the warrant requirement . . . . [Thus], both probable cause and exigent circumstances existed to justify a warrantless entry.

*Id.*, at 1315 (internal quotation marks and citations omitted).

Petitioner sought leave to appeal to the Court of Appeals, asking the court to consider "that the warrantless entry into the residence violated *Payton v. New York*, 445 U.S. 573 (1980)." SR at 55. On May 19, 2016, the Court of Appeals denied leave to appeal. *People*

7

*v. Wilson*, 27 N.Y.3d 1076 (2016).

### D. Motion to Vacate Judgment of Conviction

In August of 2013, while the direct appeal was pending, petitioner filed a *pro se* motion to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10, arguing that the trial court has erroneously denied the suppression motion. SR at 58-80. The People opposed the motion. *Id.* at 81-90. In April of 2014, petitioner sent the court a request to dismiss the motion without prejudice. *Id.* at 91-92. Pursuant to a decision and order dated May 26, 2007, the court granted petitioner's request and dismissed the motion without prejudice. *Id.* at 94-95.

## III. THE PRESENT PETITION

Petitioner contends that he is entitled to habeas relief on the following grounds: (1) evidence against him should have been suppressed because it was the result of an unreasonable, warrantless search of an apartment; and (2) trial counsel rendered ineffective assistance in failing to investigate a witness and challenge a law enforcement officer's testimony at a probable cause hearing. Pet. at 5-8.

## IV. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an

8

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1), (2); *see also Cullen v. Pinholster*, 563 U.S. 170, 180-81, 185 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement'") (quoting *Richter*, 562 U.S. at 103)).

Additionally, the AEDPA foreclosed "'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.'" *Parker v. Matthews*, 567 U.S. 37, 38 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779). A state court's findings are not unreasonable under § 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state

9

court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." *Schriro*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015) (internal quotation marks omitted). Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

### B. Failure to Suppress Evidence

Petitioner contends that the trial "court erred in denying the [petitioner's] motion to suppress the fruits of an unlawful warrantless search of an apartment." Pet. at 2. Specifically, petitioner alleges that "an unconfirmed tip [of] the smell of marihuana . . . did not reach the level of suspicion necessary to warrant probable cause to enter the dwelling . . . ." *Id.* at 5. The Fourth Department agreed with the trial court that probable cause and exigent circumstances supported the warrantless entry. *Richardson*, 132 A.D.3d at 1315. Respondent argues that petitioner's claim is barred under *Stone v. Powell*, 428 U.S. 465 (1976). R. Mem. at 13-14.

Petitioner's Fourth Amendment claim is foreclosed by *Stone v. Powell*, 428 U.S. 465 (1976). Pursuant to *Stone*, "where the State has provided an opportunity for full and fair

litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief[.]"  428 U.S. at 482; *accord Graham v. Costello*, 299 F.3d 129, 133-134 (2d Cir. 2002).  The bar created by the Supreme Court in *Stone* "applies to all Fourth Amendment claims, including claims of illegal stops, arrests, searches, or seizures based on less than probable cause[.]"  *McCray*, 2017 WL 3836054, at *6 (citing *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam)).

The only requirement under *Stone* is that the state provide a petitioner the "opportunity" to litigate a Fourth Amendment claim.  *McPhail v. Warden*, *Attica Corr. Facility*, 707 F.2d 67, 69-70 (2d Cir. 1983).  Therefore, habeas review is only available: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process."  *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977)); *accord Hirsh v. McArdle*, 74 F. Supp. 3d 525, 532-533 (N.D.N.Y. 2015).

The Second Circuit has recognized that New York provides adequate procedures to redress Fourth Amendment violations.  *Capellan*, 975 F.2d at 70 & n.1 (citing a motion to suppress evidence, pursuant to CPL § 710.10 *et seq*., as a "facially adequate" and "approved" procedure for adjudicating alleged Fourth Amendment violations); *see also, e.g, Blake v. Martuscello*, No. 10-CV-2570, 2013 WL 3456958, at *5 (E.D.N.Y. July 8, 2013) (citing CPL § 710.10 and finding that the Second Circuit has explicitly approved New York's procedure for litigating Fourth Amendment claims).

11

> [O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief.

*Graham*, 299 F.3d at 134.

The record reflects that petitioner took full advantage of his opportunity to completely adjudicate this manner in state court. *See* SR 113-126 (counseled motion requesting suppression hearing); 138-39 (granting petitioner's request for a suppression hearing); 140-48 (counseled memorandum of law, following hearing, in support of suppression); Dkt. No. 18-2 (suppression hearing transcript). At the conclusion of the hearing, a decision and order, with a detailed discussion of the facts and analysis of the relevant law, was issued. SR 155-177. The decision was examined and upheld on direct appeal by the Fourth Department, and the Court of Appeals subsequently denied petitioner's application for leave to appeal to that court. *Wilson*, 134 A.D.3d at 1396, *lv. denied*, 27 N.Y.3d at 1076.

Moreover, petitioner asserts no basis for concluding that he was precluded from using this procedure due to "an unconscionable breakdown in the underlying process." *Capellan*, 975 F.2d at 70. Petitioner merely reiterates the arguments he previously proffered. However, "[a] 'mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process,' and thus is insufficient to give this Court authority to review Fourth Amendment claims." *Williams v. Gonyea*, No. 9:16-CV-0460 (JKS), 2017 WL 4990645, at *4 (N.D.N.Y. Oct. 31, 2017) (quoting *Capellan*, 975 F.2d at 72).

Accordingly, because the state has provided corrective procedures to address

petitioner's alleged Fourth Amendment violation, and petitioner was not precluded from availing himself of that mechanism, petitioner's claim is not cognizable.

### C. Ineffective Assistance of Counsel

Petitioner contends that he was denied effective assistance of counsel when his trial attorney failed to adequately investigate witness Borg who, petitioner contends, would have denied that he told Detective Gatch that petitioner sold him cocaine on the day of the arrest. Pet. at 8. Petitioner also alleges that, had counsel done so, petitioner would not have been "forced to take a guilty plea rather than risk a trial supported by false testimony." *Id.* Petitioner asserts, without accompanying documentation, that "[t]he matter is currently pending in the state court," and "[n]o decision has been rendered[.]" *Id.* at 7. The Court has previously noted an absence of information surrounding when petitioner filed his 440 motion and what arguments it contained. Dkt. No. 8 at 4-5. Further, respondent "has been informed by the trial court and the Jefferson County Clerk's Office that they cannot locate any pending [440] motions related to [petitioner's state court] case[.]" Answer ¶ 3(b). Giving petitioner every benefit of the doubt, his claim remains unexhausted. *Id.* at 13.

Petitioner's "unexhausted ineffective assistance of counsel claim is not barred . . . because there is no time limit or number bar . . . [for such motions;] . . . therefore[, petitioner may] still exhaust his claim in state court [and t]his Court could stay the petition and allow [petitioner] to return to state court to [do so.]" *Hook v. Capra*, No. 9:12-CV-0288(JKS), 2014 WL 3895233, at *4 (N.D.N.Y. Aug. 8, 2014). The Court has previously denied petitioner's motion for a stay. Dkt. No. 8. Further, "the Supreme Court has held that it is an abuse of discretion to stay a mixed petition pending exhaustion where: 1) the petitioner has not shown

13

good cause for failing to exhaust all available state court remedies; and 2) the unexhausted claim is 'plainly meritless.'" *Id.* (quoting *Rhines v. Weber*, 544 U.S. 269, 277 (2005)); *see also Velez v. Ercole*, No. 1:06-CV-334, 2006 WL 2747046, at *4 (S.D.N.Y. Sept. 26, 2006) ("Because § 440.10 motions can be brought at any time after entry of judgment, this avenue of relief remains open and petitioner is not procedurally barred from pursuing it. A habeas court may, however, deny on the merits a habeas petition containing unexhausted claims if those claims are plainly meritless." (internal quotation marks omitted)). Respondent argues that not only is petitioner's claim unexhausted, it should be denied because it is plainly meritless. R. Mem. at 15-20; 28 U.S.C. 2254(b)(2). The Court agrees.

Before considering the merits of petitioner's claims, it is important to note that his conviction was rendered pursuant to a guilty plea.

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the [constitutionally required] standards[.]

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings."); *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) (explaining that where a petitioner provides a counseled guilty plea, "the issue is not the merits of [petitioner's] independent claims . . . but rather whether the guilty plea had been made intelligently and voluntarily with the advice of competent counsel.") (internal quotation marks and citations omitted).

14

Regardless of petitioner's unsupported claims in the present petition, by voluntarily pleading guilty, and never challenging the voluntariness of said plea, petitioner has forfeited his right to bring claims premised on errors that counsel made or actions that counsel should have taken prior to the plea process. Accordingly, the *Tollett* bar precludes petitioner's claims. Even assuming the bar did not apply, petitioner's contentions are still plainly meritless.

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness, and but for counsel's alleged errors, the result of the proceedings would have been different. *Premo*, 562 U.S. at 121-22; *accord, Strickland v. Washington*, 466 U.S. 668, 694 (1984). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Richter*, 562 U.S. at 110 (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks omitted). A petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Even if a petitioner can establish that counsel was deficient, he still must show that he suffered prejudice. *Strickland*, 466 U.S. at 693-94.

"Constitutionally effective counsel embraces a 'wide range of professionally competent assistance' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Id.* (citing *Strickland*, 466 U.S. at 690). That being said, "counsel has a duty to make reasonable

15

investigations or to make a reasonable decision that makes particular investigations unnecessary . . . [A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances . . . ." *Strickland*, 466 U.S. at 691. "[W]hen there is reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Greiner*, 417 F.3d at 321 (internal quotation marks omitted). A similar inquiry surrounds challenges regarding witnesses as "[t]he decision not to call a particular witness is typically a question of trial strategy that reviewing courts are ill-suited to second-guess. . . . Thus, counsel's decision as to whether to call specific witnesses – even ones that *might* offer exculpatory evidence – is ordinarily not viewed as a lapse in professional representation." *Id.* at 323 (internal quotation marks and citations omitted) (emphasis added); *see also Mills v. Poole*, No. 1:06-CV-0842, 2008 WL 2699394, at *26 (W.D.N.Y. June 30, 2008) ("In general, whether or not to hire an expert is the type of strategic choice by counsel that may not be second-guessed on habeas corpus review.") .

Here, petitioner cannot establish either prong of the *Strickland* test: there is nothing in the record to support the conclusion that counsel's performance was objectively unreasonable or incompetent or that petitioner was prejudiced by said representation. Petitioner contends that his trial counsel's failure to perform an investigation to find Borg and elicit his contradictory testimony resulted in ineffective assistance. However, petitioner fails to support his argument with anything other than his own conclusory allegations. These bare assertions, alone, are insufficient to establish ineffective assistance of counsel, as "the absence of evidence cannot overcome the strong presumption that counsel's conduct fell

16

within the wide range of reasonable professional assistance." *Burt v. Titlow*, 571 U.S. 12, 17 (2013) (internal quotation marks and citations omitted); *see also Alston v. Griffin*, No. 7:12-CV-8092, 2014 WL 6663458, at *14 (S.D.N.Y. Oct. 16, 2014) (dismissing ineffective assistance of counsel claim as plainly meritless because *inter alia* "complaints of uncalled witnesses are not favored in federal habeas review, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified to are largely speculative." (internal quotation marks and citations omitted)).

Further, petitioner's counsel zealously represented him throughout a suppression hearing and was able to negotiate a highly favorable plea deal. Petitioner has failed to demonstrate that the plea was prejudicial as he pled to only one of the charges for which he had been indicted, and the lowest sentence possible for that charge. *See Hill v. Colvin*, No. 9:16-CV-1301(MAD), 2018 WL 736013, at *16 (N.D.N.Y. Feb. 6, 2018) (holding that where "[t]he plea provided petitioner with a sentence at the lowest end of the mandatory sentencing range," and the potential outcomes of proceeding to trial would have probably resulted in significantly more jail time, "there was no indication that petitioner was prejudiced by taking the plea," and the ineffective assistance claim was meritless).

Accordingly, petitioner's contentions are plainly meritless. Therefore, the habeas petition is denied and dismissed.

17

## VI. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the second amended petition for a writ of habeas corpus (Dkt. No. 10) is **DENIED and DISMISSED**; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner has failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[5] and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED**.

Dated: November 15, 2018
     Syracuse, NY

Brenda K. Sannes
U.S. District Judge

---

[5] *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (holding that "§ 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right'"); *Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation") (citation omitted) (emphasis in original)).